# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           Criminal Action No. 5:15-cr-27

STEVE G. SINGO,

    Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Steve G. Singo's ("Defendant" or "Singo") motion to suppress evidence filed on June 15, 2015. ECF No. 18. The United States (hereinafter "the Government") filed a response in opposition to the motion on June 25, 2015. ECF No. 20. On July 1, 2015, this Court held an evidentiary hearing and argument on the motion. Singo appeared in person and by his counsel Scott C. Brown, Esq. The Government appeared by Stephen L. Vogrin, Esq. During the hearing, Singo presented the testimony of Sergeant Matthew Scott Adams of the West Virginia State Police. Additionally, this Court admitted Joint Exhibits 1-2 (an original and altered affidavit and complaint for a search warrant) and Government Exhibit 1 (a police log report) into evidence.

## I. INTRODUCTION

**A. Background**

On April 7, 2015, Singo was named in a two count indictment plus a forfeiture allegation charging him with receipt, distribution, and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(a)(5)(B), 2252A(b). After an initial appearance and arraignment, Singo was released on bond subject to certain conditions of release. Singo now moves this Court to

suppress all evidence and statements gathered during the execution of an October 8, 2013, search of Singo's home.

**B. The Motion**

Defendant Steve G. Singo's motion to suppress evidence. ECF No. 18.

**C. Recommendation**

I recommend that Singo's motion to suppress evidence be **DENIED** because there was sufficient evidence for a magistrate to authorize the search warrant of Singo's residence, and information collected in July 2013 was not stale for the purpose of obtaining a search warrant on October 8, 2013. Additionally, Sergeant Adams's clerical alterations of the affidavit and search warrant did not eliminate probable cause or eliminate compliance with the requirements of the Fourth Amendment. Further, even if the affidavit and search warrant were defective, the good faith exception would apply.

## II. FINDINGS OF FACT

In July 2013, Sergeant R.L. Talkington ("Sergeant Talkington") of the West Virginia State Police's Crimes Against Children Unit began an investigation to identify individuals possessing and distributing child pornography. Using a "Grid Cop" database, Sergeant Talkington searched Internet Protocol ("IP") addresses that had previously been identified as addresses possessing and distributing child pornography. Upon review of the addresses, Sergeant Talkington discovered an IP address located in Weirton, West Virginia. Sergeant Talkington discovered that the Weirton IP address was registered to Comcast Communications ("Comcast") and possessed several files containing child pornography.

On July 25, 2013, a subpoena was signed by Magistrate Warren E. Davis and delivered to

Comcast. The next day, Comcast responded and identified that the IP address was assigned to Steve Singo at 139 Heritage Road in Weirton, West Virginia.

In September 2013, the investigation was forwarded to Sergeant Matthew Scott Adams ("Sergeant Adams"), also of the West Virginia State Police's Crimes Against Children Unit. On October 8, 2013, Sergeant Adams traveled to 139 Heritage Road in Weirton, West Virginia, to photograph Singo's residence. Afterwards, Sergeant Adams attached the photo to a seventeen page affidavit and complaint for a search warrant of Singo's residence. Later that afternoon, Sergeant Adams traveled to New Cumberland, West Virginia and submitted his affidavit and complaint for a search warrant to Magistrate Michael White. During the suppression hearing, Sergeant Adams testified that he spoke with Magistrate White about the search warrant and that Magistrate White read and signed every page of the affidavit and warrant. Although Sergeant Adams appeared before Magistrate White on October 8, 2013, the affidavit was incorrectly dated July 25, 2013, and the search warrant was incorrectly dated February 13, 2013. Yet, Magistrate White signed both the incorrectly dated affidavit and warrant to search Singo's home.

That evening, around 11:00 p.m., Sergeant Adams, along with two other officers, arrived at Singo's residence. Sergeant Adams and another officer knocked on Singo's front door. Singo answered the door and Sergeant Adams advised Singo that they were there to execute a search warrant. Singo allowed the officers inside and, according to Sergeant Adams's testimony, was *Mirandized* immediately by another officer. While Sergeant Adams and another officer searched Singo's residence, Singo spoke with a second officer in his dining room. During the search, officers seized a HP laptop, four external hard drives, and two USB thumb drives.

After the search was completed, Singo provided a recorded statement to the officers. Officers

then provided Singo a property receipt for the items that were taken and a copy of the affidavit and search warrant. Officers asked Singo if he had any questions about the affidavit or search warrant. Singo said that he did. Singo stated that he noticed the affidavit and search warrant were incorrectly dated. In response, Sergeant Adams took the copy of the affidavit and search warrant given to Singo, crossed out the incorrect dates, inserted the correct date, and initialed the changes.

Based on the evidence collected and statement given on October 8, 2013, Singo was indicted in this Court for receipt, distribution, and possession of child pornography on April 7, 2015.

### III. MOTION TO SUPPRESS

**A. Contentions of the Parties**

In his motion to suppress, Singo makes two arguments in support of his request that all evidence, including statements, collected on October 8, 2013, be suppressed. First, Singo contends that the warrant was not supported by probable cause because the information supporting the search warrant was stale. Second, Singo argues that the affidavit and search warrant were invalid because Sergeant Adams altered the affidavit and search warrant after it was signed by a magistrate and executed by officers.

The Government contends that the search warrant was supported by probable cause. The Government additionally argues that Sergeant Adams's changes to the affidavit and search warrant were inconsequential because "no substantive elements that established probable cause were altered." ECF No. 20 at 8. Lastly, the Government raises that even if the warrant was not supported by probable cause, the "good faith" exception applies.

**B. Discussion**

The Fourth Amendment's prohibition against unreasonable searches and seizures mandates

that any warrant issued must be based on probable cause. U.S. Const. amend. IV. Probable cause only requires "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Although the concept of probable cause defies a precise definition, it 'exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in the place to be searched." *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

"[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). A magistrate who issues a search warrant must act in a neutral and detached manner, that is, he must not become "an adjunct law enforcement officer" or a "rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal quotations omitted). Yet, once a search warrant has been issued, review of the probable cause determination by the magistrate is to be shown "great deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990).

1. Staleness

"[T]here is no question that time is a crucial element of probable cause." *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984). The Fourth Circuit has held that,

> [a] valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case. Consequently, evidence seized pursuant to a warrant supported by "stale" probable cause is not admissible in a criminal trial to establish the defendant's guilt.

*Id.* at 1335-36 (internal quotation marks and citations omitted). A search warrant may be considered

5

stale when "the information on which it rested was arguably too old to furnish 'present' probable cause." *Id*. at 1336. However, staleness is not determined by "pat formulas" or definitive dates. *Id.* Instead, courts "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.*

In the child pornography cases, the Fourth Circuit–and other circuits–have frequently rejected staleness arguments "based on widespread expert opinion that collectors of child pornography store and retain their collections for extended periods of time." *United States v. Johnson*, 865 F. Supp. 2d 702, 706 (D. Md. 2012); *see United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010) (holding that information collected by North Carolina agents containing child pornography was not stale even if collected four months prior to obtaining a warrant); *United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010) (holding that a search warrant was supported by probable cause even though over two years had passed since the defendant and a child pornography distributor had exchanged emails); *United States v. Lemon*, 590 F.3d 612, 615 (8th Cir. 2010) (finding that an "eighteen-month interim between [defendant's] last interaction with [a distributor of child pornography] and the warrant application" did not make the warrant stale); *United States v. Vosburgh*, 602 F.3d 512, 528 (3d Cir. 2010) (concluding that information in a search warrant affidavit was not rendered stale by a four month gap between defendant's attempts to access a purported child pornography website and the warrant application); *United States v. Paull*, 551 F.3d 516 (6th Cir.2009) (finding information that the defendant subscribed to child pornography thirteen months earlier was not stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (holding that a three-year delay between the defendant's acquisition of child pornography and application for a warrant did not render the supporting information stale); *United States v. Watzman*,

486 F.3d 1004, 1009 (7th Cir. 2007) (rejecting the defendant's staleness argument "where only three months passed" and the affidavit stated that "those who possess child pornography save their materials . . . ."); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) ("We are unwilling to assume that collectors of child pornography keep their materials indefinitely, but the . . . affidavit, provided 'good reason[ ]' to believe the computerized visual depictions downloaded by [defendant] would be present in his apartment when the search was conducted ten months later.").

Here, Singo argues that "probable cause was lacking on October 8, 2013" for the authorization of a search warrant of his home because the "information supporting the issuance of the search warrant was stale." ECF No. 18 at 4. In this case, the information used to support the October 8, 2013, search warrant was collected by officers less than three months prior. In July 2013, Sergeant Talkington used a "Grid Cop" database to discover that an IP address registered in Weirton, West Virginia possessed multiple files of alleged child pornography. The IP address was registered to Comcast, and, after a subpoena, Sergeant Talkington found that the IP address was assigned to Singo at his home address in Weirton, West Virginia. This information was used in support of the search warrant obtained by Sergeant Adams on October 8, 2013. Based on legal precedent, it is clear that evidence of child pornography discovered less than three months prior to the authorization of a search warrant is not stale. *See*, *e.g.*, *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010).

However, Singo contends that the information was stale because Sergeant Adams's affidavit "seems to be devoid of any statement . . . [that] child pornographers . . . maintain such pornographic materials for a lengthy period of time." ECF No. 18 at 4-5. However, contrary to Singo's claim, Sergeant Adams does make multiple references in his affidavit that persons who possess and collect

7

child pornography tend to store their pornography for long periods of time. For example, Sergeant Adams's affidavit discusses that many possessors of child pornography use child pornography to "reliv[e] fantasies," sell child pornography for profit, or use child pornography "[a]s a medium of exchange." Jnt. Ex. 1 at 4. Sergeant Adams's affidavit notes that "offenders view their child pornographic materials as valuable commodities, sometimes even regarding them as prized collections." *Id.* at 5. Further, the affidavit discusses that collectors of child pornography may use safes, storage facilities, and digital security to protect their collections. *Id.* These statements in Sergeant Adams's affidavit clearly suggest that persons who "sell," "prize," and "store" child pornography would do so for long periods of time. Thus, based on the statements made in Sergeant Adams's affidavit and relevant case law, there was sufficient evidence for a magistrate to authorize a search warrant of Singo's residence, and the information collected in July 2013 was not stale for the purpose of obtaining a search warrant for Singo's residence on October 8, 2013.

2. Alteration of the Signed Affidavit and Search Warrant

Singo next argues that the affidavit and search warrant were invalid because Sergeant Adams crossed out the incorrect dates on the affidavit and search warrant and inserted the correct date after it was signed by Magistrate White and executed by officers.

As a preliminary matter, an authorized affidavit and search warrant containing incorrect dates is not facially invalid. *See United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004). In *White*, a St. Louis, Missouri officer presented an affidavit and search warrant to a state court judge on February 26, 2002. *Id*. at 867. However, instead of "February 26," the affidavit and search warrant were incorrectly dated "February 13." *Id.* Neither the state court judge nor the officer noticed the error, and the warrant was executed two days later. *Id.* On appeal, the defendant challenged the search

arguing that the incorrect date on the warrant made the search invalid. The Eighth Circuit disagreed, holding:

> [T]he inconsistency between the date on the warrant-application form and the date on the search warrant does not eliminate probable cause. The warrant described the premises and items to be seized with particularity. [The officer] testified that it was common practice for him to re-use application forms when applying for a search warrant. [The officer] failed to change the date typed onto his pre-printed application form. The district court found [the officer's] testimony of a clerical error credible. Based upon our review, the district court's denial of [the defendant's] motion to suppress was not clearly erroneous.

*Id.* at 869.

Similar to *White*, in this case, the inconsistency between the date appearing on the affidavit and search warrant, and the actual date of authorization by Magistrate White, did not diminish probable cause. As explained above, probable cause existed for the search warrant. Additionally, the search warrant sufficiently identified "the place to be searched and the things to be seized." *Andresen v. Maryland*, 427 U.S. 463, 492 (1976). In three pages, the affidavit describes the items to be seized and provides a detailed description of Singo's residence, including a photo of Singo's residence. Jnt. Ex. 1 at 3-5. During the suppression hearing, Sergeant Adams testified that the incorrect dates typed on the affidavit and search warrant was an unintentional error and neither Magistrate White nor Sergeant Adams noticed the mistake. Further, Singo does not claim that officers executed the search warrant before it was authorized on October 8, 2013. Thus, in review of the circumstances of this case, the magistrate and Sergeant Adams's clerical error does not defeat probable cause.

However, even if the affidavit and search warrant are not facially invalid, Singo contends that the affidavit and search warrant became invalid once Sergeant Adams altered the dates on the affidavit and search warrant after executing his search of Singo's residence. Under the Federal Rules

9

of Criminal Procedure, only a judicial officer has the authority to issue a warrant. Fed. R. Crim. P. 41(b). Therefore, "it necessarily follows that only a judicial officer may alter, modify, or correct the warrant." *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 481 (6th Cir. 2006). The facts in *Tran* concerning the alteration of a search warrant are analogous to the present case. In *Tran*,

> [t]he defendant claim[ed] that [the detective] changed the street number of the address on the affidavit and warrant to search Kimberly Beauty College after the magistrate had signed the warrant, and the warrant was, therefore, invalid. The challenged alterations involve the address of Kimberly Beauty College, 931 28th Street S.W., which was mistakenly typed as "937" 28th Street S.W. in the warrant and accompanying affidavit. In each instance, [the detective] corrected the mistake after [the magistrate judge] had signed the warrant and without informing the judge of the mistake.

*Id.* at 479. Although the court found the alteration of the warrant "improper," the court nonetheless concluded "that the alteration did not eliminate probable cause or render the warrant invalid." *Id.* The court reasoned that the detective's alteration was not done in "bad faith" and there was no "prejudice as a result" of the alteration. *Id.* at 481. According to the court, "[t]he officer simply tried to correct a minor error and did not know that the document had now become a judicial matter. The alteration did not eliminate probable cause or eliminate compliance with the requirements of the Fourth Amendment." *Id*.

Similarly, the undersigned finds that Sergeant Adams's alteration of the affidavit and search warrant's date did not render them invalid. The undersigned is concerned that Sergeant Adams, with twenty-one years of experience, believed that he could amend the dates of the affidavit and search warrant without issue. However, based on the opportunity to observe testimony, the undersigned finds Sergeant Adams's actions not in bad faith or deceptive. During the suppression hearing, Sergeant Adams was candid and throughly discussed the events leading to the authorization and execution of the October 8, 2013, search warrant. Sergeant Adams never denied altering the dates

10

of the affidavit and search warrant. Further, Sergeant Adams never attempted to conceal his actions. Sergeant Adams altered the dates by making a single line through the day and month of each document, and then inserting the correct date and initialing his changes. *See* Jnt. Ex. 2 at 1. The affidavit and search warrant, with its simple and non-prejudicial clerical alterations, remained compliant with the requirements of the Fourth Amendment. As described above, the affidavit and search warrant contained information supported by probable cause and described the place to be searched and items to be seized. Thus, the affidavit and search warrant remained valid and the October 8, 2013, search was proper.

3. Good Faith

Assuming arguendo that the search warrant was defective based on incorrect dates or staleness, "[u]nder the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)). In other words, the good faith exception applies unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. The Supreme Court has "noted four situations in which an officer's reliance on a search warrant would not be reasonable" under the good faith exception:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) the magistrate wholly abandoned his detached and neutral judicial role;

11

(3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

(4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

*United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995) (citing *Leon*, 468 U.S. at 923).

In this case, there is no evidence to suggest that the magistrate was misled or "wholly abandoned his detached and neutral judicial role." *Hyppolite*, 65 F.3d at 1156; *see also United States v. Gary*, 528 F.3d 324, 329 (4th Cir. 2008) (finding a magistrate had not abandoned his judicial role even if he "failed to detect the error in the date" of a search warrant and "[t]he affidavit was in no other respect deficient, and the magistrate testified that he read and considered it carefully."). Further, as explained above, the warrant contained sufficient probable cause and was not facially deficient. Even though the affidavit and warrant contained an incorrect date, the good faith exception "speaks exactly to this kind of error . . . ." *Derr v. Jabe*, 83 F.3d 414 (4th Cir. 1996). Thus, even if the affidavit and warrant were invalid, the good faith exception would nevertheless apply.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned recommends that Defendant's motion to suppress evidence, ECF No. 18, be **DENIED**.

Any party may, within fourteen (14) days of the filing of this report and recommendation, file with the Clerk of the Court written objections identifying the portions of the report and recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of record. Failure to timely file objections to the report and recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation.

DATED: July 8, 2015                    /s/ *James E. Seibert*
                                       JAMES E. SEIBERT
                                       UNITED STATES MAGISTRATE JUDGE